IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO.  4:11-CR-017 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S |
| JEFFREY SCOTT KEPLER, | ) | RESPONSE TO MOTION TO |
| | ) | DISMISS COUNT TWO |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW THE UNITED STATES OF AMERICA, and resists the defendant's

motion to dismiss count two of the indictment.


TABLE OF CONTENTS

I.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.     Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.     The Stolen Valor Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.     Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I.  Introduction.

The common defense was one of the purposes for which the people ordained and established the Constitution," and [w]hatever tends to lessen the willingness of citizens to discharge their duty to bear arms in the country's defense detracts from the strength and safety of the government.

Oliver Wendel Holmes, *United States v. Schwimmer,* 279 U.S. 644, 650 (1929).

Defendant Jeffrey Scott Kepler dissents from the view of Justice Holmes, who was thrice-wounded fighting for the union in the Civil War, and argues that he has a constitutional right to falsely represent himself as a war hero, thereby diluting the respect due to those who actually render such service to our nation.  Mr. Kepler argues count two of the indictment against him should be dismissed because he is "charged under a section of the United States Code that is facially invalid under the First Amendment to the United States Constitution."  Defendant's Brief in Support at 5.

He is incorrect. The Constitution does not afford citizens a right to lie or make intentional false statements.[1]  *United States  ex rel. Wilson, v. Maxxam, Inc,* Slip Copy, No. C 06-7497 CW, 2009 WL 322934 at *6 (N.D. Cal. Feb. 9, 2009) ("While citizens have a First Amendment right to petition the government, **they do not have a First Amendment right to lie** while doing so."); *People v. Ellis,* 765 N.E.2d 991, 999 (Ill. 2002) (**"Neither the United States Constitution nor the Illinois Constitution conveys a right to lie."**); *In re Benjamin,* 698 A.2d 434, 441 (D.C.1997) ("an attorney has **no First Amendment right to lie** to a court. . . . Even if an attorney's statement of a legal position may be entitled to First Amendment protection, a deliberate misstatement of fact to

_____

[1]The government has boldfaced the print of pertinent parts of the parentheticals in this paragraph.

a court surely is not protected, just as obscenity or "fighting words" are not protected.  We know of

no case that holds otherwise; indeed, we would be astonished to find one.") (footnotes omitted);

*Anderson v. Strong Memorial Hosp.,* 573 N.Y.S.2d 828, 833 (N.Y. Sup. Ct. 1991) (A newspaper has

"no special sanction to make a promise to a news source and then fail to keep it," because **to do so**

**would be saying  "'the First Amendment gives us the right to lie'. . . . Talk about a blow to the**

**First Amendment:** If people didn't trust us, they wouldn't tell us anything. Then we couldn't print

the truth, and you couldn't read it."); *Rouse Philadelphia, Inc. v. Ad Hoc '78,* 19 Pa. D. & C.3d 627,

670 (Pa. Com. Pl. 1979) ("**It is not the right to lie which is of value or the subject of First**

**Amendment protection, it is the right to speak (and hopefully and incidentally, but only**

**hopefully and incidentally,) to tell the truth**.").  If persons had a constitutional right to lie, the

federal courts could no more be used to enforce libel laws than they can be used to enforce race-

based restrictive covenants.  *Cf. Shelley v. Kraemer,* 334 U.S. 1 (1948).  This is not the law of the

land.

Section 704(b) of the Stolen Valor Act is constitutional, and count two should not be

dismissed.

## II.  Facts.

In order to understand the government and individual interests at issue, the Court should be

advised of the facts underlying count two.

Mr. Kepler only served in the United States Army from May 13, 1986, until June 9, 1985,

when he was honorably discharged for not meeting "medical fitness standards," according to his real

DD Form 214. He did not serve in the military long enough to earn veterans benefits. He nevertheless decided in August of 2007 to submit a forged DD Form 214 to the United States Department of Veterans Affairs ("VA"), in which he made several false statements in a successful effort to convince VA personnel he was a veteran qualified for its medical services.

Mr. Kepler completed, signed, and submitted a false and fraudulent DD FORM 214, CERTIFICATE OF RELEASE AND DISCHARGE FROM ACTIVE DUTY which he used, in part, to try and obtain VA health care benefits for which he was not eligible.

Mr. Kepler represented to the United States Department of Veterans Affairs in the DD FORM 214, CERTIFICATE OF RELEASE AND DISCHARGE FROM ACTIVE DUTY that he served 2 years, 11 months, and 23 days in the United States Army between January 1977 and August 1979, when, in fact, he only served a total of approximately 27 days in the United States Army, after which he received an honorable discharge for failing to meet medical fitness standards.

Mr. Kepler represented to the United States Department of Veterans Affairs in the DD FORM 214, CERTIFICATE OF RELEASE AND DISCHARGE FROM ACTIVE DUTY that he was an Airborne Ranger, and qualified for Officer Candidate School, when, in fact, he achieved none of these accomplishments during his 27 days in the United States Army.

Mr. Kepler falsely represented to the United States Department of Veteran Affairs on a DD FORM 214, CERTIFICATE OF RELEASE AND DISCHARGE FROM ACTIVE DUTY, that he had been awarded numerous Army medals, including the Silver Star, and twice awarded the Bronze Star and Purple Heart, along with other awards, when, in fact, he had not earned or been awarded any such medals.

4

The **Silver Star** is the third-highest military decoration that can be awarded to a member of any branch of the United States armed forces for valor in the face of the enemy.  It was established by Act of Congress 9 July 1918 (amended by Act of 25 July 1963).  AR 600-8-22, ¶¶ 3-10 (Dec. 2006); *see also* 10 U.S.C. § 3746.



The Silver Star is  awarded to "any person who, while serving in any capacity with the U.S. Army, is cited for gallantry in action against an enemy of the United States while engaging in military operations involving conflict with an opposing foreign force."  AR 600-8-22, ¶¶ 3-10(b). "The required gallantry . . .  must . . . have been performed with marked distinction."  *Id.*  The only two higher awards for heroism are the Medal of Honor, or the second highest, the Distinguished Service Cross.  Mr. Kepler was never awarded a Silver Star.

The **Bronze Star** is the fourth-highest military decoration that can be awarded to a member of any branch of the United States armed forces for bravery in combat.  The Bronze Star was established by Executive Order 9419, dated February 4, 1944, and Executive Order 11046, dated

August 24, 1962, as amended by Executive order 13286, 28 February 2003.  AR 600-8-22, ¶¶ 3-14(a).



The Bronze Star is awarded to "any person who, while serving in any capacity in or with the Army of the United States after 6 December 1941, distinguishes himself or herself by heroic or meritorious achievement or service not involving aerial flight, in connection with military operations against an armed enemy." AR 600-8-22, ¶¶ 3-14(b).  Federal law limits the award of the Bronze Star to "service members receiving imminent danger pay."  *Id.*  Mr. Kepler was never awarded a Bronze Star.

The **Army Commendation Medal** was established by War Department Circular 377, 18 December 1945 (amended in DA general orders 10, 31 March 1960.  It is awarded to "any member of the Armed Forces of the United States who, while serving in any capacity with the Army after 6 December 1941, distinguishes himself or herself by heroism, meritorious achievement or meritorious service."    AR 600-8-22, ¶¶ 3-17(a).



The **Purple Heart** in a military medal established by General George Washington at Newburgh, New York, on 7 August 1782, and was reestablished by the President of the United States in 1932, pursuant to War Department General Orders 3, 1932.  It is currently awarded to military personnel pursuant to Executive Order 11016, dated April 25, 1962, and Executive Order 12464, dated February 23, 1984, Public Law 98-525, 19 October 1984, amended by Public Law 100-48, 1 June 1987, Public Law 103-160, 30 November 1993, Public Law 104-106, 10 February 1996, and Public Law 105-85, 18 November 1997.  AR 600-8-22, ¶¶ 2-8(a).



The Purple Heart is awarded in the name of the President of the United States, and, pursuant to 10 U.S.C. § 1131, is "limited to members of the Armed Forces of the United States who, while serving under competent authority in any capacity with one of the Armed Forces of the United States after 5 April 1917, has been wounded or killed, or who has died or may hereafter die after being wounded" in combat with an enemy of the United States, as the result of an international terrorist attack, or as part of foreign peacekeeping force.  AR 600-8-22(b) (1) - (8).  The Purple Heart differs from all other decorations because a soldier is not recommended for it; a soldier is entitled to the Purple Heart upon meeting specific criteria.  AR 600-8-22(c).

Mr. Kepler never served in combat, was never part of an international peacekeeping force, and was never wounded in an international terrorist attack.  He was never awarded a Purple Heart.

Mr. Kepler falsely represented to the United States Department of Veterans Affairs on a DD FORM 214, CERTIFICATE OF RELEASE AND DISCHARGE FROM ACTIVE DUTY, that he had been a "covert operations specialist," and claimed that no release of information was possible, and that his personnel records had been altered, when, in fact, none of this was true.

Mr. Kepler used the false and fraudulent DD FORM 214, CERTIFICATE OF RELEASE AND DISCHARGE FROM ACTIVE DUTY to obtain free or subsidized health care benefits from the VA to which he was not entitled, including, but not limited to, prescriptions, outpatient services, and inpatient services.

As a result of his false representations to the VA, Mr. Kepler received over $109,000 in VA benefits between August 1, 2008, and at least April 6, 2010.

8

When interviewed by the case agent, Mr. Kepler eventually admitted that he misrepresented

his military record to the VA.

### III.  Analysis.

### A.       Overview.

Mr.  Kepler argues that count two is facially invalid under the First Amendment.  A facial

challenge to a statute is "generally disfavored."  *United States v. Nenninger,* 351 F.3d 340, 344 (8th

Cir. 2003).  Facial invalidity challenges are disfavored for several reasons:

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the
> risk of "premature interpretation of statutes on the basis of factually barebones
> records."Facial challenges also run contrary to the fundamental principle of judicial
> restraint that courts should neither " 'anticipate a question of constitutional law in
> advance of the necessity of deciding it' " nor " 'formulate a rule of constitutional law
> broader than is required by the precise facts to which it is to be applied.' "  Finally,
> facial challenges threaten to short  circuit the democratic process by preventing laws
> embodying the will of the people from being implemented in a manner consistent
> with the Constitution. We must keep in mind that "'[a] ruling of unconstitutionality
> frustrates the intent of the elected representatives of the people.'"

*Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 450 - 51 (2008)

(citations omitted).

A party can succeed in a facial challenge only by proving "that no set of circumstances exists

under which the Act would be valid," *i.e.,* that the law is unconstitutional in all of its applications."

*Washington State Grange,* 552 U.S. at 449 (citing *United States v. Salerno,* 481 U.S. 739 (1987)).

In determining a law's facial validity, the courts "must be careful not to go beyond the statute's facial

requirements and speculate about "hypothetical" or "imaginary" cases.  *Washington State Grange,*

552 U.S. at 450.

The statute is not facially invalid under this standard.  The statute here is constitutional as applied to false statements made by persons who claim to have earned a narrow set of military decorations, when they have not.  Additionally, it can be interpreted to constitutionally apply to knowing false statements, made with the intent to deceive others.  Mr. Kepler did not make the false statements at issue at part of a public discourse: he made them to the U.S. Department of Veterans Affairs to deceive it into providing him with health benefits for which he was not eligible. The statute is both narrowly tailored to serve a compelling government interest, and rationally related to a legitimate government purpose.

**B.**    **The Stolen Valor Act.**

The relevant portion of the charging statute, 18 U.S.C. § 704 (Military medals or decorations), states:

**(b) False claims about receipt of military decorations or medals.**--Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal, or any colorable imitation of such item shall be fined under this title, imprisoned not more than six months, or both.. . . .

**(d) Enhanced penalty for offenses involving certain other medals.**--If a decoration or medal involved in an offense described in subsection (a) or (b) is a distinguished-service cross awarded under section 3742 of title 10, a Navy cross awarded under section 6242 of title 10, an Air Force cross awarded under section 8742 of section 10, a silver star awarded under section 3746, 6244, or 8746 of title 10, a Purple Heart awarded under section 1129 of title 10, or any replacement or duplicate medal for such medal as authorized by law, in lieu of the punishment provided in the applicable subsection, the offender shall be fined under this title, imprisoned not more than 1 year, or both.

10

On its face, the statute only applies to persons who falsely represent that they have been awarded a narrow set of military medals, badges, and similar honors.

> Congress and the military itself have explained the reasons why the statute was enacted:
>
> (1) Fraudulent claims surrounding the receipt of the Medal of Honor, the distinguished service cross, the Navy cross, the Air Force cross, the Purple Heart, and other decorations and medals awarded by the President or the Armed Forces of the United States damage the reputation and meaning of such decorations and medals.
>
> (2) Federal law enforcement officers have limited ability to prosecute fraudulent claims of receipt of military decorations and medals.
>
> (3) Legislative action is necessary to permit law enforcement officers to protect the reputation and meaning of military decorations and medals.

Section 2 (Findings), Stolen Valor Act of 2005, Pub.L. No. 109-437, § 2, 120 Stat. 3266, 3266 (2006).   The purpose of the Army's medal program in the military is to "foster mission accomplishment by recognizing excellence of both military and civilian members of the force and motivating them to high levels of performance and service."   AR 600-8-22; *United States v. Perelman,* 737 F. Supp. 2d 1221, 1238 (D. Nev. 2010).   There is no doubt that the military has a compelling interest in fostering the accomplishment of its missions and motivating troops to high levels of service and performance.   The military's awards and decorations program fosters morale, provides incentives, and inspires esprit de corps.   Such awards and decorations are important symbols of public recognition for extraordinary heroism, exceptional service, or outstanding achievement above and beyond what is normally expected.

The legislative purposes behind the Act and the medals program are unquestionably within the constitutional power of Congress and the President, insofar as "the Constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping," *Perelman,* at 1238 (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)), as is the President's power as Commander-in-Chief. These interests are, indeed, "important and substantial." *Perelman,* at 1238.[2]

**C.    Analysis.**

The Ninth Circuit's decision in *United States v. Alvarez,* 617 F.3d 1198 (9th Cir. 2010), is the foundation upon which Mr. Kepler's constitutional challenge is based. It is not, however, the sole court that has addressed the constitutionality of the Stolen Valor Act. *See United States v. Robbins*, — F.Supp.2d —, No. 2:10CR00006, 2011 WL 7384 (W.D. Va. Jan. 3, 2011) (statute prohibiting persons from making false claims about receipt of military decorations did not violate First Amendment); *United States v. Perelman,* 737 F. Supp. 2d 1221 (D. Nev. 2010) (provision of the Stolen Valor Act criminalizing the unauthorized wearing of medals is constitutional); *but see United States v. Strandlof,* 764 F. Supp. 2d 1183 (D. Colo. 2010) (provision criminalizing false representations was facially invalid). Indeed, numerous judges on the Ninth Circuit itself disagree with the majority's opinion in *Alvarez,* — F.3d. — , No. 08-50345, 2011 WL 941617 (9th Cir.

---

[2]Surely, the government has a similar interest in deterring persons from impersonating recipients of military decorations and medals as it does in deterring persons from falsely pretending to be a law enforcement officer. *Chappell v. United States,* Slip Copy, No. 1:10cr42 (LMB), 2010 WL 2520627 (E.D. Va. June 21, 2010) (upholding impersonation statute against First Amendment challenge).

March 21, 2011) (O'Scannlain, Gould, Bybee, Callahan, Bea, Ikuta, Smith, and Gould, dissenting).
Thus, the position taken by the Ninth Circuit is far from settled law.  Of course, what is important
in this jurisdiction is not how Mr. Kepler's arguments square with the Ninth Circuit's interpretation
of federal law, but whether they are supported by binding U.S. Supreme Court and Eighth Circuit
precedent.

"Under strict scrutiny review, the government has the burden to prove that the constraints on
speech are supported by a compelling governmental interest and are narrowly tailored, such that the
statutory effect does not prohibit any more speech than is necessary to serve the governmental
interest." *Milavetz, Gallop & Milavetz, P.A. v. United States,* 541 F.3d 785, 792 (8th Cir. 2008).
Restrictions on speech that is not subject to First Amendment protection, such as obscenity and false
statements of fact, will be upheld as constitutional if "rationally related to the government's
legitimate interest."  *United States  v. Bach,* 400 F.3d 622, 629 (8th Cir. 2005).

The Eighth Circuit has upheld statutes that regulate unprotected speech against facial
invalidity challenges.  *United States v. Dinwiddie,* 76 F.3d 913, 922 (8th Cir. 1996).  A statute
regulating unprotected speech need only be rationally related to a legitimate government interest to
pass constitutional muster. *United States v. Bach,* 400 F.3d 622 (8th Cir. 2005) (child pornography);
*United States v. Freeman*, 808 F.2d 1290 (8th Cir. 1987).  Section 704(b) of the Stolen Valor Act
is constitutional under both strict scrutiny and the rational basis test.

Section (b) of the Stolen Valor Act is narrowly-tailored to address only those persons who
"falsely represent" themselves to have been awarded certain military decorations or medals.   "It is
difficult to imagine a scenario in which a speaker honestly believes that he has been awarded a

military honor that he has not actually received." *United States v. Alvarez*, — F.3d. — , No. 08-50345, 2011 WL 941617 at *18, (9th Cir. March 21, 2011) (O,Scannlain, et, al., dissenting from denial of petition for rehearing en banc). Additionally, § 704(b) can also be read to criminalize only knowing false statements, intended to deceive, *United States v. Robbins*, — F.Supp.2d —, No. 2:10CR00006, 2011 WL 7384, at * 3 (W.D. Va. Jan. 3, 2011), and not accidental, theatrical or rhetorical statements.[3]

Judge Gould's dissent in *Alvarez* succinctly explains the government interests involved:

> A rational Congress might think that the quality of military service and instances of award winning heroism will be enhanced to the extent that there aren't false claims of entitlement to military honors. This [military] interest is a powerful one that a federal court should hesitate to diminish by outlawing the controlling statute on its face. Conversely, Alvarez has no substantial personal interest in lying about his military record, nor is there any substantial societal interest by letting Alverez lie about earning awards he did not receive. . . . Congress's criminalization of making false statements about receiving military honors is a "carefully defined" subset of false factual statements not meriting constitutional protection. Stated another way, there should be no conclusion of unconstitutionality even on the [strict scrutiny] standard framed by the majority opinion.

---

[3]In this circuit, "courts are to adopt constructions of statutes that avoid grave and doubtful constitutional questions," and "ambiguity concerning the ambit of a criminal statute should be resolved in favor of the narrower interpretation of the statute." *United States v. Rea,* 223 F.3d 741, 744 (8th Cir. 2000). As the Supreme Court has stated:

> [W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless  such construction is plainly contrary to the intent of Congress.... This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution.

*DeBartolo Corp. v. Florida Gulf Coast Trades Council,* 485 U.S. 568, 575 (1988) (internal citations omitted).

14

*Alvarez,* — F.3d —, 2011 WL 941617, at * 20. "Given the military context impelling Congress and lack of substantial interest of Alvarez or society in his falsehood, the Stolen Valor Act should be sustained against . . . First Amendment challenge." *Id.* at * 21.

Furthermore, section 704(b) is rationally-related to the government's legitimate interest in promoting a well-functioning and well-respected military, by ensuring that the heroism of soldiers, sailors, and civilians who serve our country is not diminished by those who falsely claim they have won certain medals. Section (b) is intended to prevent dilution of the military's important awards program, which provides incentive for soldiers to not only perform their duties, but to above and beyond them. The government's interest in protecting this program far outweighs any individual or societal interest in false statements of fact. The act does not encroach on any protected areas of speech, but regulates lies.

Contrary to Mr. Kepler's arguments, not all speech is entitled to constitutional protection:

> The First Amendment presupposes that the freedom to speak one's mind is not only an aspect of individual liberty-and thus a good unto itself-but also is essential to the common quest for truth and the vitality of society as a whole. Under our Constitution "there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." Nevertheless, there are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

*Bose Corp. v. Consumers Union of US, Inc.*, 466 U.S. 485, 503-504 (1984) (citations omitted).

Deceptions by a person made to deceive others into believing he earned military decorations for

heroism "are no essential part of any exposition of idea," and are not "essential to the common quest for truth and the vitality of society as a whole." Thus, such lies are not protected by the First Amendment.

Clearly, the "First Amendment does not shield fraud." *Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.,* 538 U.S. 600, 612 (2003). The Supreme Court has specifically held that "[s]preading false information in and of itself carries no First Amendment credentials[,]" therefore, "there is no constitutional value in false statements of fact." *Herbert v. Lando,* 441 U.S. 153, 171 (1979) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)); *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18 (1990); *see also BE & K Construction Co. V. NLRB*, 536 U.S. 516, 530 - 531 (2002) (baseless litigation, like false statements, are not immunized by the First Amendment). Other unprotected categories of speech are libel, fighting words, incitement to riot, and child pornography, *Bose,* 466 U.S. at 505, and obscenity. *Miller v. California*, 413 U.S. 15 (1973).

The Ninth Circuit held in *Alvarez* that the false statements of fact are protected by the First Amendment. That is neither the law of the land nor the law of this circuit. Here, the First Amendment offers no protection to statements that are knowingly false. *Plouffe v. Ligon,* 606 F.3d 890, 894 (8th Cir. 2010); *Secrist v. Harkin,* 874 F.2d 1244, 1248 (8th Cir. 1989) ("defendants are liable only for false statements of fact"). *Time, Inc. v. Firestone,* 424 U.S. 448, 482 (1976) ("no one seriously disputes, that . . . there is no constitutional value in false statements of fact.")(false statements "belong to that category of utterances which ' . . . are of such slight social value as" to be worthy of no First Amendment protection.") (White, dissenting). It makes little sense for the

Constitution to permit the government to penalize deceptive advertising that has commercial harm, but not allow the government to penalize deceptive statements that harm its military.

Justice Brennan explained why lies do not enjoy First Amendment protection in great detail:

> Although honest utterance, even if inaccurate, may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity. At the time the First Amendment was adopted, as today, there were those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even topple an administration.  That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For **the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality**. . . .Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection.

*Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) (emphasis added) (citations omitted).  The fact that one of the Supreme Court's greatest defenders of First Amendment rights, and his Brethren, rejected the notion that the Constitution protects the right to lie is considerably more significant that the Ninth Circuit's opinion in *Alvarez. See also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, . . .baseless litigation is not immunized by the First Amendment right to petition") (citations omitted).

The Constitution does not prevent a government from totally banning narrowly-defined

categories of unprotected speech. For example, "misleading advertising may be prohibited entirely[,]" but "the States may not place an absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive." *In re R.M.J.*, 455 U.S. 191, at 203 (1982) (unanimous court). The statements at issue here are only those that are deceptive and misleading to the public. In this case, they were misleading to the VA. Society does not benefit from such lies. Neither Mr. Kepler nor the *Alvarez* Court explain why a person has no constitutional right to engage in libel, slander, or deceptive advertising, but is constitutionally immunized from liability for intentional false statements that impact the nation's military and deceive the federal government.

Other United States Courts of Appeals have recognized that the First Amendment does not apply to protect falsehoods. For example, in *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215 (3d Cir. 2004), the Court upheld the constitutionality of a police regulation that required officers to be truthful, explaining that, generally, "[u]ntruthful speech is not protected by the First Amendment," but, nevertheless, "lies and untruthful statements are protected under First Amendment jurisprudence only in those rare instances where they contribute to the "uninhibited marketplace of ideas." *Id.* at 227-228. The "marketplace of ideas" does not encompass "petty lies or untruths of everyday life and, of course, the sort of intentional lies - such as lying to one's supervisor about one's whereabouts when reporting sick - at issue in" *Gibson*. *Id.* at 227. Mr. Kepler's false statements do not contribute to the marketplace of ideas.

The First Amendment is no barrier to the use of government power to hold persons

18

accountable for making intentional false statements.  For example, the law of defamation, which employs the state and federal court systems to civilly sanction those who present public falsehoods about others, does not run afoul of the First Amendment.  Thus, if a newspaper falsely accused Mr. Kepler of being a war-monger, and former member of Delta Force, with extensive combat experience, and numerous medals to his credit, it could be sued for defamation without violating the First Amendment because the Constitution does not protect the intentional dissemination of false facts.  It would be an odd interpretation of the Constitution if Mr. Kepler can use the federal court system against someone who lies about his military record, but cannot constitutionally be held accountable for telling lies about his own record.  The Constitution is not so hypocritical.

The Stolen Valor Act leaves Mr. Kepler and Mr. Alvarez with significant First Amendment freedoms.  They can argue against military action.  They can criticize military policy.  They can even scoff at the merit of those who receive military awards.  But they cannot falsely claim to have been awarded specific military honors without facing the consequences.

19

### IV.  Conclusion

Section (b) of the Stolen Valor Act is constitutional.  It does not infringe on protected speech.

It is narrowly tailored to serve a compelling government purpose, and is rationally related to a

legitimate government purpose.  It is not facially invalid.  Count two should not be dismissed.

Respectfully submitted,

Nicholas A. Klinefeldt
United States Attorney

By: /s/ *Craig Peyton Gaumer*
   Craig Peyton Gaumer
   Assistant United States Attorney
   U.S. Courthouse Annex, Suite 286
   110 E. Court Avenue
   Des Moines, Iowa 50309
   Tel: (515) 473-9300
   Fax: (515) 473-9292
   Email: craig.gaumer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2011, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

___ U.S. Mail ____ Fax _____ Hand Delivery

_X__ ECF/Electronic filing ____ Other means

UNITED STATES ATTORNEY

By: /s/   J. Beane
   Legal Assistant