IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JEFFREY SCOTT KEPLER,<br><br>        Defendant. | 4:11-cr-00017-JAJ<br><br><br><br>**ORDER** |

      This matter comes before the Court pursuant to Defendant Jeffery Scott Kepler's Motion to Dismiss. (Dkt. No. 18). The Government filed a response on April 20, 2011. (Dkt. No. 23). For the reasons discussed below, Defendant's motion is granted.

**I. BACKGROUND**

      Count 2 of a three-count indictment in this case charges that Defendant "falsely represented to the United States Department of Veterans Affairs on a DD Form 214, Certificate of Release and Discharge From Active Duty, that he had been awarded numerous Army medals, including the Silver Star, and twice awarded the Bronze Star and Purple Heart, along with other awards when in fact, he had not earned or been awarded such medals." This is a violation of subsections (b) and (d) of the Stolen Valor Act, 18 U.S.C. § 704.

      Defendant moves to dismiss this claim on the grounds that §§ 704(b) and (d) are facially invalid under the First Amendment to the United States Constitution. The issue in this case is whether the First Amendment to our Constitution leaves room for a statute that prohibits people from lying. It erects no barrier against punishing people who lie in order to receive government benefits, but does it allow us to punish someone criminally simply because he told a lie or for claiming that he is a better person that he

really is?  Our Constitution reflect the belief that in order to secure truly free speech, we have to protect speech we do not like.  The law has been clear in this regard for quite some time.  And so, with nothing but reverence for the honors we bestow on the men and women who have secured our freedom and continue to do so, the Court fulfills its allegiance to the United States Constitution by dismissing Count 2.

## II. DISCUSSION

### A. The Stolen Valor Act and Facial Challenges

Defendant is charged with violation 18 U.S.C. § 704(b) and (d), which provide

> (b) False claims about receipt of military decorations or medals.--Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States, any of the service medals or badges awarded to the members of such forces, the ribbon, button, or rosette of any such badge, decoration, or medal, or any colorable imitation of such item shall be fined under this title, imprisoned not more than six months, or both
> . . .
> (d) Enhanced penalty for offenses involving certain other medals.--If a decoration or medal involved in an offense described in subsection (a) or (b) is a distinguished-service cross awarded under section 3742 of title 10, a Navy cross awarded under section 6242 of title 10, an Air Force cross awarded under section 8742 of section 10, a silver star awarded under section 3746, 6244, or 8746 of title 10, a Purple Heart awarded under section 1129 of title 10, or any replacement or duplicate medal for such medal as authorized by law, in lieu of the punishment provided in the applicable subsection, the offender shall be fined under this title, imprisoned not more than 1 year, or both.

18 U.S.C. § 704(b), (d).  Thus, subsection (b) sets out the basic offense, and subsection (d) provides for an increased penalty if the defendant falsely represents

himself or herself has having been awarded certain honors or medals.  Consequently, the Court need only determine the constitutionality of § 704(b), which in turn will determine the constitutionality of § 704(d) as applied in this case.

Defendant challenges § 704(b) on its face, arguing that any conviction under that statute would be unconstitutional.  To do so, a defendant typically must "establish that no set of circumstances exists under which [the statute] would be valid." *United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987) (internal quotations omitted)).  However, in the First Amendment context, a defendant can also succeed on a facial challenge by establishing that a statute is overboard, meaning that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n.6 (2008) (internal quotations omitted). .

"The first step in overbreadth analysis is to construe the challenged statute." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008) (internal quotations omitted)).  The Government contends that § 704(b) should be construed to apply only to knowingly false statements that are intended to deceive and, therefore, not to accidental, theatrical, or rhetorical statements.  It is true that the canon of constitutional avoidance dictates that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, the Court's duty is to adopt the latter." *Jones v. United States*, 529 U.S. 848, 849 (2000) (citing *United States ex re. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)).  However, "the canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a *means of choosing between them*." *Clark v. Martinez*, 543 U.S. 371, 385

(2005) (citation omitted). Further, "[n]o rule of construction . . requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope." *Salinas v. United States*, 552 U.S. 52, 59 (1997) (quoting *United States v. Raynor*, 302 U.S. 540 (1938)). To do so "would trench upon the legislative powers vested in Congress by Art. I, § 1, of the Constitution." *Id.* (citing *United States v. Locke*, 471 U.S. 84 (1985).

     Section 704(b) is clear and not susceptible to multiple constructions. *Id.* at 60 (noting that a statute is unambiguous if it is "'plain to anyone reading the Act' that the statute encompasses the conduct at issue"). It applies to all false representations and contains no ambiguities from which the Court could conclude that Congress intended only to criminalize knowingly false statements made for the purpose of deception.[1] Moreover, it could very well be that, contrary to the Government's proposed construction, Congress thought it necessary to criminalize even satirical or rhetorical violations of § 704(b) in order to preserve the dignity of military honors. The statute is construed—in accordance with its plain language—to sweep with exceptional breadth, criminalizing all false representations by a speaker that he or she was awarded a military honor or medal.

---

[1] Here, the Government essentially attempts to shoehorn § 704(b) into one of the traditional unprotected categories of speech—namely, fraud. *See Stevens,* 130 S.Ct. at 1584. But fraud is not mere lying. That is, even the Government's construction lacks an essential element of a fraud claim: proof of detrimental reliance or actual harm to the plaintiff. *See Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 620-21 (2003) (noting that "[f]alse statement alone does not subject a [speaker] to fraud liability" and that the "[e]xacting proof requirements" required for a fraud claim, including the fact that the victim was actually mislead, "provide sufficient breathing room for protected speech"). Thus, § 704(b)—even construed along the Government's line—would not fall within the historically unprotected category of fraud.

## B. The Applicable Standard of Review

The parties do not dispute that § 704(b) regulates the content of speech. Content-based speech regulations are subjected to strict scrutiny. *See United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). An exception to this rule exists, however, for "certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). This class of speech includes obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *Stevens*, 133 S.Ct. at 1584 (2010). The Government contends that intentionally false statements fall within this narrow class of speech and that only rational basis review should apply to § 704(b). Defendant disagrees and argues that truth is not a touchstone of First Amendment protection.

The Government argues that, like defamation, intentionally false factual statements are constitutionally unprotected speech. In support of this argument, the Government cites to *United States v. Gertz*, 418 U.S. 323 (1974). *Gertz* involved a libel action brought against a publisher of a magazine article that described plaintiff as a "Communist-Fronter." 418 U.S. at 326. The Government cites *Gertz* for the proposition that "erroneous statement of fact is not worthy of constitutional protection." *Id.* at 340; *see also Herbert v. Lando*, 441 U.S. 153, 171 (1979) (stating that "there is no constitutional value in false statements of fact")). Therefore, the Government argues, "the First Amendment offers no protection to statements that are knowingly false," like those made by Defendant in this case. (Dkt. No. 23).

However, the Government avoids the Supreme Court's recent decision in *United States v. Stevens*, 130 S.Ct. 1577 (2010), where the Court struck down a federal law banning depictions of various animal cruelty. In *Stevens*, the government proposed the following test for First Amendment protection: "[w]hether a given category of speech

5

enjoys First Amendment protection depends upon a categorical balancing of the value of the speech against its societal costs." *Id.* at 1585 (internal quotations omitted). The government further argued that "depictions of animals being intentionally tortured and killed [are] of such minimal redeeming value as to render [them] unworthy of First Amendment protection." *Id.* (internal quotations omitted). The Court first noted that the government derived its proposed test from the Court's descriptions of historically unprotected categories of speech as being "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.* (quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383 (1992)). However, the Court went on to clarify:

> [S]uch descriptions are just that—descriptive. They do not set forth a test that may be applied as a general matter to permit the Government to imprison any speaker so long as his speech is deemed valueless or unnecessary, or so long as an ad hoc calculus of costs and benefits tilts in a statute's favor.

*Id.* at 1586. Instead, the *Stevens* Court noted that categories of speech falling outside the First Amendment's protection did so because they were "intrinsically related" to an underlying criminal act, rather than because they failed a simple cost-benefit analysis. *See id.* There is no criminal act underlying much of the speech criminalized by § 704(b), such as mere lies.[2] Thus, the Government asks this Court to expand the traditional categories of unprotected speech to include false factual statements that are not intrinsically related to an underlying criminal act. The *Stevens* Court issued a

---

[2] That is not to say there was no criminal act underlying Defendant's speech in this case. Because Defendant allegedly violated §§ 704(b) and (d) in an attempt to attain veterans benefits, the criminal act underlying his speech may be fraud. But Defendant's challenge is a facial one, and the Court must consider whether a substantial number of § 704(b)'s applications are unconstitutional.

warning against just such expansion, well-heeded here: "[o]ur decisions in [*New York v. Ferber*, 458 U.S. 747 (1982)] and other cases cannot be taken as establishing a freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *Id.*

The Eighth Circuit has also recently heeded the warning in *Stevens*. After the Government filed its brief on this matter, the Eighth Circuit decided *218 Care Committee, et al. v. Ron Arneson, et al.*, 2011 WL 1584724 (8th Cir. 2011). Referring to the statement in *Gertz* that "erroneous statement of fact is not worthy of constitutional protection," the Eighth Circuit stated,"we are not eager to extend a statement (often quoted, but often qualified) made in the complicated area of defamation jurisprudence into a new context in order to justify an unprecedented and vast exception to First Amendment guarantees." *Id.* at *10 (quoting *United States v. Alvarez*, 617 F.3d 1198, 1208 (9th Cir. 2010) (also holding that the Stolen Valor Act is facially invalid as violative of the First Amendment)). The Eight Circuit went on to conclude that, "[after] finding that Supreme Court precedent does not currently recognize knowingly false speech as a category of unprotected speech, we also decline to, ourselves, establish it as such." *Id.*  Thus, the Eighth Circuit explicitly disagrees with the Government in this case. False statements are entitled to constitutional protection, and content-based restrictions on factually false speech are subject to strict scrutiny.

### C. Application of Strict Scrutiny

Under the familiar strict scrutiny standard, the Government must show that the law is narrowly tailored to serve a compelling government interest. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 129 S.Ct. 1125, 1132 (2009). Thus, "[c]ontent-based regulation are presumptively invalid," *Playboy*, 529 U.S. at 817 (quoting *R.A.V.*

*v. St. Paul*, 505 U.S. 377, 382 (1992) (internal quotations omitted)), and few laws survive such scrutiny. *Id.* at 818 ("It is rare that a regulation restricting speech because of its content will ever be permissible."). A compelling government interest is an interest "of the highest order." *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). And a law is not narrowly tailored when less restrictive means exist to achieve the government interest. *Reno v. American Civil Liberties Union*, 521 U.S. 884, 874 (1997).

The Congressional Findings preceding the Stolen Valor Act explain the government interests at issue:

> (1) Fraudulent claims surrounding the receipt of the Medal of Honor, the distinguished-service cross, the Navy cross, the Air Force cross, the Purple Heart, and other decorations and medals awarded by the President or the Armed Forces of the United States damage the reputation and meaning of such decorations and medals.
> (2) Federal law enforcement officers have limited ability to prosecute fraudulent claims of receipt of military decorations and medals.
> (3) Legislative action is necessary to permit law enforcement officers to protect the reputation and meaning of military decorations and medals.

Section 2 (Findings), Stolen Valor Act of 2005, Pub.L. No. 109-437, § 2, 120 Stat. 3266, 3266 (2006). Thus, the central interest underlying the Stolen Valor Act is the preservation of the reputation and meaning the military decorations and medals. And the Government argues that "[t]he military's awards and decorations program fosters morale, provides incentives, and inspires esprit de corps," which collectively comprise a compelling government interest. (Dkt. No. 23).

Certainly, the military has a considerable interest in honoring the men and women who serve this country in uniform, and that interest is most likely a "compelling" one. However, the Government has failed to prove that § 704(b) is a narrowly tailored means of achieving that interest. The Court agrees with the Ninth

Circuit's conclusion that more speech, rather than enforced silence, is the preferred remedy to Defendant's wrong. *See Alvarez*, 617 F.3d at 1216-17 (noting that defendant's "lie . . . did not escape notice and correction in the marketplace"); *see also Brown v. Hartlage,* 456 U.S. 45, 61 (1982) ("The preferred First Amendment remedy of 'more speech, not enforced silence,' . . . has special force.") (quoting *Gertz*, 418 U.S. at 339-404). Here, the Government has failed to establish that criminally punishing false claimants of military awards is the best and least restrictive means of preserving the reputation and meaning of the military's honor system. Indeed, the extent to which false claimants of such awards do, in fact, damage the reputation and meaning of the military honor system is unclear. *Id.* at 1217 (noting that "[t]he greatest damage done seems to be to the reputations of the liars themselves," rather than decorated servicemen and women); *see also United States v. Strandlof*, 746 F.Supp.2d 1183, 1191 (D.Colo. 2010) ("I have profound faith . . . that the reputation, honor, and dignity military decorations embody are not so tenuous or ephemeral as to be erased by the mere utterance of a false claim of entitlement.").

    The military could make it easier to verify whether a person was awarded certain medals or honors, thereby adding rather than subtracting from the marketplace of speech. Congress could also redraft § 704(b) to apply to instances of actual fraud and still preserve the reputation and meaning of military honors within the boundaries of the First Amendment. What Congress cannot do is outlaw mere lying, even if the lies cut against the considerable government—and public—interest of honoring those who dutifully and bravely serve this country.

    Finally, the Court notes that Defendant's actual speech in this case is not necessarily protected by the First Amendment. As noted throughout this Order, fraudulent speech exists beyond the aegis of First Amendment protection. The Court's ruling is simply that § 704(b), and by relation § 704(d), are facially unconstitutionally

under the Supreme Court's overbreadth doctrine.  Accordingly, Defendant cannot be charged for his alleged fraud under those particular statutes.

### III. CONCLUSION

Because §§ 704(b) and (d) criminalize mere lying, the Court concludes that a substantial number of those statutes' applications are unconstitutional.  As a result, §§ 704(b) and (d) are overbroad and are therefore facially invalid.

Upon the foregoing,

**IT IS ORDERED**

That Defendant Jeffrey Scott Kepler's Motion to Dismiss (Dkt. No. 18) is granted.

**DATED** this 31st day of May, 2011.

> JOHN A. JARVEY
> UNITED STATES DISTRICT JUDGE
> SOUTHERN DISTRICT OF IOWA